UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LEE SALTMARSHALL,

        Plaintiff,

v.

Case Number 18-10887
Honorable David M. Lawson
Magistrate Judge R. Steven Whalen

VHS CHILDREN'S HOSPITAL OF MICHIGAN,
INC. and SCOTT LANGENBERG,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION, VACATING IN PART OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING AMENDED COMPLAINT, AND DISMISSING MOTIONS *IN LIMINE* AS MOOT**

In its last opinion and order, the Court dismissed much of plaintiff James Lee Saltmarshall's amended complaint, in which he alleged that he was wrongfully accused of sexually assaulting and murdering his infant daughter. *See Saltmarshall v. Prime Healthcare Servs.*, --- F. Supp. 3d ---, 2019 WL 3213717 (E.D. Mich. July 11, 2019). The only surviving count was for defamation against a physician and his hospital. Those defendants have moved for reconsideration, contending that the doctor's false statements did not actually identify Saltmarshall as the murderer, and the doctor's statement, which was made to a police officer, was absolutely privileged under Michigan common law. The second argument, supported by caselaw that the defendants neglected to bring to the Court's attention in their earlier motion briefs, has merit. Therefore, the Court will grant reconsideration, grant summary judgment on the remaining claim, and dismiss the case.

I.

The facts of the case were discussed at length in the Court's opinion on the defendants' motion for summary judgment. *See Saltmarshall*, 2019 WL 3213717, at *1-11. The plaintiff was accused of sexually assaulting and murdering his infant daughter, Janiyah, based on, at least in part, statements made by defendant Dr. Scott Langenberg to Lt. Jeffrey Twardzik, a police officer for the City of Inkster. Janiyah had been transferred to Children's Hospital of Michigan in Detroit, where she was found to be in grave condition. Dr. Helene Tigchelaar examined her in the emergency room, placed her in critical care, and described her condition as an "apparent non-survivable injury."

Defendant Langenberg, who was present when resuscitation efforts initially were performed, was the doctor at Children's Hospital responsible for Janiyah's care while on the surgical service. Langenberg, who had met Lt. Twardzik at the hospital, later sent him a text message, which contained the false information upon which the defamation claim is based:

> Baby has skull fractures, brain swelling on CT (likely will meet brain death criteria). Lung bruising, anterior anal laceration. We have some other studies pending.
>
> This is non-accidental trauma. The perpetrator murdered this child.
>
> Nice meeting you. Scott
>
> Scott Langenberg, M.D. Children's Hospital of Michigan

PageID.3741, 4158. Langenberg followed that message with another one the next morning asking if Janiyah's mom and dad were in custody.

The defendants argued that Saltmarshall's state-law claims were barred by the immunity conferred by Michigan's Child Protection Law (CPL), which requires "a physician . . . who has reasonable cause to suspect child abuse or child neglect [to] make an immediate report . . . of the

suspected child abuse or child neglect." Mich. Comp. Laws § 722.623(1)(a). The CPL states that "[a] person acting in good faith who makes a report, cooperates in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action." Mich. Comp. Laws § 722.625. The Court denied summary judgment to Dr. Langenberg (and therefore to Children's Hospital as well) because the evidence was sufficient to question his good faith when he made an accusation of murder:

> A jury could conclude that he took an active role in encouraging prosecution, despite his lack of accurate evidence, medical or otherwise. He offered an opinion to the police that the child suffered "non-accidental trauma," falsely asserted that the infant had skull fractures when he had not even seen any imaging studies, and declared that the plaintiff "murdered this child," when she had not even been pronounced dead. He later acknowledged that no fractures were confirmed, based on a final x-ray reading, but he never informed Lt. Twardzik of that correct information. And when asked at his deposition why he thought Janiyah was murdered, Dr. Langenberg testified that he used the word in a "medical" sense, when there in fact is not any "medical sense" of that legal and colloquially inflammatory term. Finally, he took it upon himself the following morning to send another text to Lt. Twardzik, this time asking if Janiyah's mom and dad were in custody. There is enough evidence in the record at this stage of the proceedings to rebut the presumption that defendant Landenberg was acting in good faith when he interacted with the police in this case.

*Saltmarshall*, 2019 WL 3213717, at *21.

The Court denied summary judgment on the claim of defamation *per se* because there were fact issues on all the elements of that claim. The Court wrote:

> Dr. Langenberg accused the plaintiff — "the perpetrator" — of murder. That statement was communicated to Lt. Twardzik in a series of text messages. The defendant argues that the CPL immunizes him from that conduct, but as discussed above, it doesn't. He does not attempt to argue in his summary judgment motion that the defamation count against him should be dismissed for any other reason.

*Id.* at *25.

In their reconsideration motion, the defendants point out that they actually did raise other arguments that the Court did not address, namely, that (1) the plaintiff cannot establish the element of defamation *per se* that the statements were "concerning the plaintiff"; and (2) the allegedly

- 3 -

defamatory statements constitute reporting suspected criminal activity to police and therefore are privileged under Michigan common law. They argue that the lack of discussion of those points warrants reconsideration.

II.

Relief under a motion for reconsideration generally is reserved to cases where the moving party shows (1) a "palpable defect," (2) that misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Mich. Dep't of Treasury v. Michalec*, 181 F.Supp.2d 731, 734 (E.D. Mich. 2002) (citations omitted). A motion for reconsideration is not intended as a means to allow a losing party simply to rehash rejected arguments or to introduce new arguments. *See, e.g. Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("Thus, parties should not use [motions to reconsider] to raise arguments which could, and should, have been made before judgment issued.").

New arguments "raised for the first time in a motion for reconsideration at the district court generally [are] forfeited." *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331–32 (6th Cir. 2009). Old arguments re-presented will not justify reconsideration. *See* E.D. Mich. LR 7.1(h)(3) ("Generally . . . the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court."). Instead, the moving party must show that the Court made a mistake based on the record before it and rectifying the mistake would change the outcome. E.D. Mich. LR 7.1(h)(3).

The defendants accurately assert that the Court did not consider the defendants' alternative grounds for dismissal, as described above, which were presented in the defendants' motion for summary judgment. The defendants argued that "Dr. Langenberg . . . [is] entitled to summary

- 4 -

judgment of the plaintiff's state law claims because [he is] immune from civil liability for statements made to the police about suspected criminal activity," and the "plaintiff has failed to present evidence of a defamatory statement made by defendants concerning plaintiff." *See* Defs.' Mot. for Summary Judgment at 23, 32, ECF No. 67, PageID.3505, 3514. The Court will address those arguments now.

## A. Defamation *Per Se*

"'A defamatory communication is one that tends to harm the reputation of a person so as to lower him in the estimation of the community or deter others from associating or dealing with him.'" *TM v. MZ*, 326 Mich. App. 227, 240-41, 926 N.W.2d 900, 909 (2018) (quoting *Lawrence v. Burdi*, 314 Mich. App. 203, 214, 886 N.W.2d 748 (2016)). To make a claim of defamation against Dr. Langenberg, the plaintiff must offer evidence showing "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Edwards v. Detroit News, Inc.*, 322 Mich. App. 1, 13, 910 N.W.2d 394 (2017) (citations omitted).

The defendants contend that the plaintiff failed to put forth sufficient evidence that Dr. Langenberg's statements to Lt. Twardzik were "concerning the plaintiff," because the first set of messages to Lt. Twardzik involved medical diagnoses and did not identify the plaintiff by name or otherwise reference him. They assert that the messages merely conveyed a "belief that the injuries Janiyah sustained were 'non-accidental' and life-threatening, meaning whoever inflicted the injuries (the 'perpetrator') likely acted intentionally in causing Janiyah's death." Mot. at 11, ECF No. 83, PageID.5158.

The offending statement — "the perpetrator murdered this child" — "must be considered in context to determine whether it can reasonably be understood as stating actual facts about [the] plaintiff." *Kefgen v. Davidson*, 241 Mich. App. 611, 631, 617 N.W.2d 351, 362 (2000). The record reflects that Dr. Langenberg was present in the emergency room when Janiyah arrived at Children's Hospital. Janiyah initially was examined by Dr. Tigchelaar, who completed a "Form 3200" — required paperwork for those mandated by state law to report known or suspected child abuse or neglect — on which she noted "James Saltmarshall" as the "alleged perpetrator of abuse or neglect." ECF No. 68-34, PageID.4151. Dr. Tigchelaar admitted Janiyah to the surgical service, at which time she was under Dr. Langenberg's care. Before rounding the next morning, Dr. Langenberg asked Lt. Twardzik via text message whether Janiyah's mom and dad were in custody. Viewing the facts in the light most favorable to the plaintiff, there is sufficient evidence to support the inference that Dr. Langenberg's statement was concerning the plaintiff. There is no merit to the defendants' first argument on reconsideration.

## B. Privilege

The defendants also contend that the plaintiff's defamation claim fails as a matter of law because the statements concerned suspected criminal activity and therefore they are privileged under Michigan common law. As this Court discussed in *Sanders v. Stanley*, 794 F. Supp. 2d 755, 761-62 (E.D. Mich. 2011), there was some doubt over whether the privilege afforded to such statements is absolute or qualified. *Compare Hall v. Pizza Hut of America, Inc.*, 153 Mich. App. 609, 619, 396 N.W.2d 809, 813 (1986) (holding that a defamation claim based on statements by a restaurant employee who told police that she thought she recognized an individual in the restaurant who had robbed the store on an earlier occasion could not proceed because "information given to police officers regarding criminal activity is absolutely privileged"), *with Shinglemeyer v. Wright*,

124 Mich. 230, 239-240, 82 N.W. 887, 890 (1900) (allowing for the possibility that "malicious" statements may be actionable, suggesting that the privilege is qualified, not absolute); *see also Smith v. Primco Mgmt. Corp.*, No. 193207, 1997 WL 33344476, at *3 (Mich. App. July 15, 1997) (discussing the opinion in *Hall* and concluding that "the Court was not entirely certain that the privilege was absolute"); *but see Brooks v. Owosso Public Schools*, Nos. 188556 & 194424, 1998 WL 1991899, at *2 (Mich. App. Mar. 27, 1998) (discussing the same cases and concluding that "statements made to the police regarding criminal activity are also entitled to an absolute privilege").

This Court ultimately concluded in *Sanders* that it was unlikely that, "based on the current precedent, the Michigan Supreme Court would find that intentionally false statements to police officers about an individual's involvement in a crime are not actionable." 794 F. Supp. 2d at 762. The Court found that "[s]tatements regarding suspected criminal activity made to the police are privileged, but the privilege is a qualified one," and that in order to overcome that privilege, the plaintiff must come forward with evidence that statements to the police "were intentionally false or made with reckless disregard for the truth." *Ibid.*

In their motion for summary judgment, the defendants asserted that "the only evidence that plaintiff presents to support the allegation that Dr. Langenberg['s] . . . statements to the police were intentionally false or malicious is the findings of the medical examiner," which contradicted Dr. Langenberg's belief that Janiyah suffered non-accidental trauma. Mot. Summary Judgment, ECF No. 67, PageID.3506. The defendants argued that under *Sanders*, a difference of medical opinion cannot support the inference that a doctor's statement to the police was intentionally false or made with malice. *See Sanders*, 794 F. Supp. at 762 ("The Court finds that the plaintiffs ask too much of their evidence. The differences in the medical opinions in this case, even as profound

as they may be, cannot support the inference that the doctors at Botsford Hospital, when expressing their concern that a live baby may be at risk and need help, made statements to the police with malice.").

On reconsideration, the defendants now insist that the privilege is absolute, not qualified. The defendants assert that since *Sanders*, the Michigan Court of Appeals has clarified in a published decision that "statements made to the police regarding criminal activity are absolutely privileged and therefore immune from suit for defamation." *Eddington v. Torrez*, 311 Mich. App. 198, 200, 874 N.W.2d 394, 396 (2015). In *Eddington*, the defendant falsely reported to the police that the plaintiff had stolen gasoline from a gas station on several occasions. *Id.* at 199, 874 N.W.2d at 395. The plaintiff alleged that the defendant's reports were made with knowledge that they were untrue or with reckless disregard for the truth. *Ibid.* The trial court concluded that regardless of the intent with which the defendant acted, the statements were subject to an absolute privilege and could not be the basis for a defamation claim. *Ibid.*

In affirming the trial court's decision, the court of appeals explained that "[t]he privilege asserted here had its genesis in *Shinglemeyer v. Wright*." *Id.* at 200, 874 N.W.2d at 398. The court observed that in *Shinglemeyer*, the Michigan Supreme Court held that communications made to the police are privileged, and if that were not the law, "no person would be safe from prosecution in communicating to police officers, whose duty it is to examine into the case and hunt for the criminal, his suspicions or statements which might tend to implicate a person." *Id.* at 249, 82 N.W. at 890. "Consequently, persons who make statements to the police when reporting crimes or assisting the police in investigating crimes enjoy a privilege in those statements against the police divulging them for any purpose other than law enforcement." *Eddington*, 311 Mich. App. at 201, 874 N.W.2d at 397.

*Eddington* resolved any doubt as to whether the privilege asserted here is absolute: "The simple fact is that *Shinglemeyer* created an absolute privilege that arises in the context of a defamation claim and covers any report of criminal activity to law enforcement personnel, and *Shinglemeyer* remains the law." *Id.* at 203, 874 N.W.2d at 397. The Court sees no reason to depart from that holding. *See Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (explaining that "where Michigan appellate courts have spoken in the Supreme Court's absence, 'we will normally treat those decisions . . . as authoritative absent a strong showing that the [Michigan Supreme Court] would decide the issue differently.'") (quoting *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997)).

Saltmarshall correctly points out that the defendants failed to cite *Eddington* in their motion for summary judgment or at oral argument, and instead attempted to claim privilege within the bounds of this Court's discussion in *Sanders*. *See* Mot. Summary Judgment at 24, ECF No. 67, PageID.3506. However, the defendants did acknowledge that the Michigan Court of Appeals previously had recognized the privilege as absolute, citing *Hall* and *Shinglemeyer*. *See id.*, PageID.3505. The defendants did not forfeit the argument, and they since have brought persuasive authority to the Court's attention. The earlier omission by itself is not a basis to deny reconsideration.

The plaintiff also disputes the application of *Eddington* to the facts of this case, arguing that the Child Protection Law abrogated *Shinglemeyer* in the context of suspected child abuse. He says that the CPL's immunity provision supplants that common law, at least when the report deals with suspected child abuse or neglect. But, he says, the immunity is qualified by a good faith requirement, which remains in play in this case, per the previous opinion. *See* Mich. Comp. Laws § 722.625 (stating that a physician "acting in good faith who makes a report, cooperates in an

investigation, or assists in any other requirement of [the CPL] is immune from civil or criminal liability that might otherwise be incurred by that action."). He reasons that the Michigan Legislature "plainly and unequivocally abrogated absolute immunity" by setting forth a good-faith standard in the CPL under which reporters' conduct must be evaluated. According to the plaintiff, the enactment demonstrates the legislature's intent to modify and update the common law in this area. Michigan law does not support that position.

The *Eddington* court explained that "[i]f the privilege set forth in *Shinglemeyer* is to be abrogated in any way, our Legislature must enact a statute on point, or our Supreme Court must abrogate the *Shinglemeyer* privilege." *Eddington*, 311 Mich. App. at 203, 874 N.W.2d at 397. The court observed that it "ha[d] been unable to discover any indication that either manner of abrogation ha[d] occurred." *Ibid.* Likewise, this Court finds no indication in the CPL that the Michigan Legislature intended to do away with any other common law immunity. The plaintiff's position cannot be squared with *Eddington*.

The plaintiff cites *Warner v. Mitts*, 211 Mich. App. 557, 536 N.W.2d 564 (1995), but that case does not help him. There, Warner alleged that the defendant maliciously and false reported to the Department of Social Services that he had sexual intercourse with his minor daughter. *Id.* at 558, 536 N.W.2d at 565. The defendant raised affirmative defenses that the statements were true and that the CPL provided immunity from suit. *Id.* at 558, 536 N.W.2d at 565-66. The court of appeals affirmed the trial court's finding that the defendant had acted in good faith despite his alleged animosity toward the plaintiff and the plaintiff's wife. *Id.* at 560, 536 N.W.2d at 566. Not only did *Warner* predate *Eddington* by 20 years, but the court had no occasion to address *Shinglemeyer*, because common law immunity apparently was not raised and the defendant was entitled to summary judgment under the CPL. The plaintiff urges the Court to treat the *Warner*

court's silence on absolute immunity as evidence that *Shinglemeyer* does not extend to reports of child abuse. But nothing in *Eddington* circumscribed the court's holding in such a way. *See Eddington*, 311 Mich. App. at 203, 874 N.W.2d at 397 (clarifying that "*Shinglemeyer* created an absolute privilege that arises in the context of a defamation claim and covers *any* report of criminal activity to law enforcement personnel.") (emphasis added). The plaintiff's "absence of evidence is evidence of absence" argument proves too much.

### III.

*Eddington* made clear that Dr. Langenberg's messages to Lt. Twardzik "may not be used to sustain a defamation claim." *Id.* at 202, 874 N.W.2d at 397. Dr. Langenberg therefore is entitled to summary judgment on the plaintiff's only remaining claim. And because the plaintiff's claim of defamation cannot proceed as a matter of law, VHS Children's also is entitled to summary judgment based on its conduct, as it cannot be found vicariously liable. *See Al-Shimmari v. Detroit Medical Ctr.*, 477 Mich. 280, 296, 731 N.W.2d 29, 37 (2007). The defendants' motion for reconsideration will be granted, the July 11, 2019 opinion and order will be vacated in part, and the case will be dismissed in its entirety.

Accordingly, it is **ORDERED** that the defendants' motion for reconsideration (ECF No. 83) is **GRANTED**.

It is further **ORDERED** that the Court's July 11, 2019 opinion and order granting in part and denying in part the defendants' motion for summary judgment is **VACATED IN PART**, and the VHS defendants' motion for summary judgment (ECF No. 67) is **GRANTED**.

It is further **ORDERED** that the plaintiff's amended complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the parties' motions *in limine* (ECF No. 85-89) are **DISMISSED AS MOOT**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: August 22, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on August 22, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI